**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
————————————————————————————

**UNITED STATES OF AMERICA**

      **- against -**            **07 Cr. 557 (JGK)**

**WILFREDO SALAS,**                  **OPINION AND ORDER**

             **Defendant.**
————————————————————————————

**JOHN G. KOELTL, District Judge:**

    In June 2007, a Grand Jury in the Southern District of New
York returned a one-count Indictment against the defendant,
Wilfredo Salas. The single count of the Indictment charged the
defendant with conspiracy, in violation of 21 U.S.C. § 846, to
distribute and possess with intent to distribute a controlled
substance – specifically, "five kilograms and more of mixtures
and substances containing a detectable amount of cocaine, in
violation of Title 21, United States Code, Sections 812,
841(a)(1), and 841(b)(1)(A)." (Indictment ¶ 2.) The defendant
has made a number of pretrial motions, seeking (1) suppression
of all wiretap evidence and the fruits thereof obtained, or an
evidentiary hearing with respect to the wiretap pursuant to
Franks v. Delaware, 438 U.S. 154 (1978), (2) suppression of any
evidence obtained in a search of the defendant's residence, (3)
suppression of any evidence of post-arrest statements made by
the defendant, (4) a bill of particulars, and (5) dismissal of

the Indictment as "void for duplicity."  After presenting the
relevant facts, the Court will address each motion in turn.


                                    I

     In seeking a court order authorizing the interception of
wire communications over cellphone number (347) 776-2357, the
Government submitted the Affidavit of Joseph Kaleta (the "Kaleta
Affidavit"), a Special Agent with the Drug Enforcement
Administration.  (Gov't Ex. B.)  The Kaleta Affidavit made the
following factual representations.[1]

     In January 2007, an individual who has pleaded guilty to
federal narcotics crimes and who is cooperating with the
Government in the hope of receiving leniency at sentencing (the
"CW") provided the Government with information about an
individual known to him as "Pito."  (Gov't Ex. B ¶ 15.)  The CW
provided the Government with reliable information in the past
that led to the arrest and indictment of another target for
cocaine distribution and the seizure of cocaine and cash.
(Gov't Ex. B ¶ 15).  The CW later identified "Pito" as the
defendant through a photo identification.  (Gov't Ex. B ¶ 18.)
The CW advised the Government that the defendant was a retail

―――――――――――――――――――――
[1] The facts set forth in the Kaleta Affidavit are reaffirmed in the Affidavit
of Special Agent Matthew Daly, discussed below.  (Gov't Ex. C ¶ 15.)  The
defendant has made almost no factual submissions that contradict anything in
the Government's Affidavits.  Therefore, the facts as presented in the
Affidavits fairly reflect the present factual record for purposes of these
motions, unless otherwise indicated.

distributor of cocaine, whom the CW had come to know when the CW was a wholesale distributor of cocaine. Although the CW and the defendant never dealt in narcotics with one another, according to the CW they were friendly, and freely discussed their respective narcotics businesses, an assertion the defendant has not squarely denied.[2] According to the CW, the defendant was involved in a cocaine and crack distribution organization that included the defendant's brother, later identified by the CW as Michael Salas, and his cousin, later identified by the CW as Phillip Casanova.[3] (Gov't Ex. B ¶¶ 15-18.) According to the CW, the family's narcotics operation was at one point supplied by a Colombian source. (Gov't Ex. B ¶ 15.)

In February 2007, at the direction of the Government, the CW made several calls to the defendant at the cellphone number (347) 776-2357, the number the defendant has conceded he was using, and arranged a meeting with the defendant. (Gov't Ex. B ¶ 16; Deft.'s Aff. ¶¶ 4-7.) The Government equipped the CW with a hidden recording device for the meeting. At the meeting, the

---

[2] The defendant seeks to discredit the CW's assertion without denying it. He states: "A cooperating witness ('CW') who had allegedly been a 'wholesale supplier of cocaine to various retail distributors in New York City' claimed that he had become familiar with me through his former business. However, the cooperating witness admitted that he had never made any drug transactions with me. Despite never engaging in any illegal activity with me, the CW further claimed that I would 'freely discuss [my alleged] narcotics business[]' with him." (Deft.'s Aff. ¶ 5) (alterations in original). The defendant does not actually dispute, in his Affidavit, that he had such discussions with the CW.

[3] The defendant has denied that he is related to Phillip Casanova by blood or marriage. (Deft.'s Aff. ¶ 8.)

defendant revealed, among other things, that (1) he was looking for a cocaine supplier on behalf of his cousin, who was trying to rebuild his narcotics business; (2) his cousin and his brother were trafficking in large amounts of cocaine, but their operation had slowed down because his brother had been arrested; (3) his cousin was trying to "cook" a kilogram of cocaine into crack; and (4) his cousin had multiple projects ongoing and numerous people working for him in his narcotics dealing operation.  (Gov't Ex. B ¶ 17.)

In addition to presenting the foregoing facts, the Kaleta Affidavit described an analysis of toll records and other telephone records showing that the (347) 776-2357 cellphone had been in extensive contact with cellphones subscribed to by Casanova and other suspected narcotics dealers.  These records also revealed that the (347) 776-2357 cellphone had been in contact with phones used by Michael Salas' wife and mother-in-law.  (Gov't Ex. B ¶ 19.)

On April 4, 2007, based primarily on the CW's historical information about the defendant, the recorded February 2007 meeting, and the toll records analysis, the Government submitted the Kaleta Affidavit seeking authorization from Chief Judge Wood to intercept wire communications occurring over the (347) 776-2357 cellphone (hereafter the "defendant's cellphone").  (Gov't Ex. B ¶¶ 34-38.)

Chief Judge Wood granted the Government's application. Over the next several weeks, the Government intercepted numerous calls appearing to relate to narcotics trafficking. The calls strongly implicated the defendant in narcotics sales, and included several references to his premises in connection with possible narcotics sales.[4] (Gov't Exs. F, G, H, J.) The Government also engaged in limited physical surveillance of the defendant, and in the course of this surveillance the Government was eventually able to track down one of the defendant's narcotics customers. (Gov't Ex. J ¶ 6.)

On April 26, 2007, the Government submitted an Affidavit by Special Agent Matthew Daly (the "Daly Affidavit") seeking authorization from Judge Griesa to intercept wire communications occurring over the cellphone believed to be used by Casanova, call number (347) 472-8016 (hereafter the "Casanova cellphone"). (Gov't Ex. C.) The Daly Affidavit affirmed the facts set forth in the Kaleta Affidavit, (Gov't Ex. C ¶ 15), and presented the contents of various conversations intercepted over the defendant's cellphone since April 4, 2007 as evidence to support the Government's application for authorization to intercept communications over Casanova's cellphone. Among other things, the Daly Affidavit reproduced conversations between the

---

[4] It is not necessary to describe the contents of the intercepted calls in detail, because the defendant has not argued that the content of the intercepted calls failed to provide probable cause for any subsequent Government action taken with respect to the defendant.

defendant and Casanova that occurred over the defendant's phone
and the Casanova cellphone.  These conversations appeared to
concern narcotics transactions.  (Gov't Ex. C ¶¶ 18-19.)  The
Daly Affidavit also relied on a toll analysis of the Casanova
cellphone showing that the cellphone was in contact with
cellphones used by other suspected narcotics dealers.  (Gov't
Ex. C. ¶ 20.)  Judge Griesa granted the Government's application
for the authority to use a wiretap.

On June 4, 2007, the Government sought permission to search
the defendant's apartment, largely on the basis of the wiretap
evidence.  Magistrate Judge Orenstein of the Eastern District of
New York granted the Government the requested search warrant,
and the Government searched the defendant's premises.  (Gov't
Ex. J.)

There are presently no facts in the record with respect to
what evidence was obtained from the search of the premises.
There are also no facts in the record with respect to any
statements the defendant may have made after his arrest.

II

The defendant moves to suppress all wiretap evidence and
the fruits of that evidence.  He advances several grounds: the
Government lacked probable cause to justify the wiretaps; the
Government failed to show that the wiretaps were necessary; and

the Government did not comply with the minimization requirement for the wiretaps.  The defendant moves in the alternative for a _Franks_ hearing to determine whether suppression is appropriate given what the defendant considers to be the false statements and omissions contained within the Affidavits supporting the Government's wiretap applications.  The defendant's arguments are without merit.

A

The defendant argues that the Government lacked probable cause to justify the wiretaps.

Authorization to employ a wiretap requires probable cause that (1) an individual is committing, has committed, or is about to commit a particular enumerated offense; (2) particular communications concerning that offense will be obtained through the wiretap; and (3) the facilities subject to interception are being used in connection with commission of the offense.  18 U.S.C. § 2518(3); see also _United States v. Diaz_, 176 F.3d 52, 110 (2d Cir. 1999).  The standard for probable cause for authorization to employ a wiretap is the same as the standard for probable cause to obtain a search warrant.  _Diaz_, 176 F.3d at 110.  That standard requires that the "totality of the circumstances" reflect a "fair probability that . . . evidence of a crime will be found . . . ."  _Illinois v. Gates_, 462 U.S.

213, 238 (1983). Put another way, "[p]robable cause to issue a wiretap order exists when the facts made known to the issuing court are 'sufficient to warrant a prudent man in believing' that evidence of a crime could be obtained through the use of electronic surveillance." United States v. Ruggiero, 824 F.Supp. 379, 398 (S.D.N.Y. 1993) (quoting Beck v. Ohio, 379 U.S. 89, 91 (1964)). The probable cause standard in this context is not "especially demanding." United States v. Bellomo, 954 F.Supp. 630, 636 (S.D.N.Y. 1997); see also United States v. Scala, 388 F.Supp.2d 396, 401 (S.D.N.Y. 2005) ("Probable cause is not a particularly demanding standard.").

In assessing probable cause, an affidavit submitted to support a wiretap application "must be read as a whole, and construed in a realistic and common-sense manner . . . . In other words, a court must look at the snowball, not the individual snowflakes." Scala, 388 F.Supp.2d at 401-02 (internal quotation marks and citations omitted).

A reviewing court owes great deference to the prior findings of an issuing judicial officer that probable cause exists. See, e.g., United States v. Wagner, 989 F.2d 69, 72 (2d Cir. 1993); United States v. Santiago, 185 F.Supp.2d 287, 288 (S.D.N.Y. 2002); United States v. Gangi, 33 F.Supp.2d 303, 306 (S.D.N.Y. 1999). The standard of review in this context is whether the issuing judicial officer had a "substantial basis"

for the finding of probable cause. E.g. Gates, 462 U.S. at 236;

Wagner, 989 F.2d at 72. Thus, wiretap orders are presumed

valid, and any doubts as to the existence of probable cause are

resolved in favor of upholding the authorization. See United

States v. Ambrosio, 898 F.Supp. 177, 181 (S.D.N.Y. 1995).

The defendant argues that there was no probable cause for a

wiretap of his cellphone, because the Kaleta Affidavit submitted

in support of that wiretap relied solely on the criminal history

of the defendant's brother, together with the fact that the

defendant had been in contact with his brother, to speculate

that the defendant was using his cellphone in a drug conspiracy.

This argument is completely without merit. The face of the

Kaleta Affidavit directly contradicts the notion that the

affiant relied solely on the criminal history of the defendant's

brother to draw his conclusions. The Affidavit explicitly

points to the evidence provided by a cooperative witness who had

proved to be reliable and who provided direct evidence of

conversations with the defendant, together with substantiation

from the recorded February 2007 meeting between the defendant

and the cooperating witness.

The defendant also argues that probable cause was lacking

because the Affidavit made reference to a call placed from the

defendant's phone to the phone of one "Karl Watson," whom

Special Agent Kaleta described as an associate of a Mexican drug

cartel kingpin. (Gov't Ex. B ¶ 19.) The defendant claims not
to know Karl Watson. This argument does not defeat probable
cause, because the Affidavit is replete with other facts
contributing to probable cause and the defendant may not
"dissect each piece of information in the [agent's] affidavit to
show that each fact taken alone does not establish probable
cause." Gangi, 33 F.Supp.2d at 306. Rather, as noted above, a
wiretap affidavit must be read as a whole.

The defendant's arguments against the existence of probable
cause for the wiretap of his cellphone thus fall well short.
The facts set forth in the Kaleta Affidavit plainly constituted
probable cause to warrant obtaining evidence by the interception
of communications over the defendant's cellphone. The Kaleta
Affidavit contained incriminating information from a previously
reliable informant that the defendant was involved in a
narcotics conspiracy with at least his cousin and his brother.
That information was confirmed by a recorded meeting, summarized
in the Affidavit, in which the defendant, having arranged the
meeting using his cellphone, essentially disclosed that he was
playing an important role in such a conspiracy. The Affidavit
also represented that toll records showed that the defendant's
cellphone had been in contact with phones used by various
suspected drug dealers, including Casanova. Chief Judge Wood
clearly had a sufficient basis to make a "practical, common-

sense decision," Gates, 462 U.S. at 238, given the totality of the circumstances, that the defendant was involved in a narcotics conspiracy, that a wiretap of his cellphone would produce evidence of his involvement, and that the defendant was using his cellphone in connection with the conspiracy.

The defendant also moves to suppress the wiretap evidence obtained pursuant to the April 26, 2007 Order to intercept calls made over the Casanova cellphone. However, the defendant makes no reasonable argument to support the claim that probable cause was lacking. The Daly Affidavit clearly provided a sufficient basis for Judge Griesa's determination that there was probable cause to use a wiretap on the Casanova cellphone. The Daly Affidavit reaffirmed the factual representations of the Kaleta Affidavit. In addition, the Daly Affidavit reproduced multiple conversations between Casanova and the defendant, on their respective cellphones, intercepted over the defendant's cellphone pursuant to the April 4, 2007 Order. In his Affidavit, Special Agent Daly explained that these conversations concerned narcotics transactions, and that belief was credible given the contents of the conversations. (See Gov't Ex. C ¶¶ 18-19.) Finally, the Daly Affidavit indicated that a toll analysis revealed that the Casanova cellphone had been in contact with phones belonging to other suspected narcotics dealers. Given all of the evidence set forth in the Daly

Affidavit, and the deference owed to Judge Greisa's determination that probable cause existed, there is no basis to suppress the wiretap evidence obtained from the surveillance of the Casanova cellphone on probable cause grounds.[5]

B

The defendant argues that the Government failed to show that the wiretaps of the defendant's and Casanova's cellphones were necessary. The defendant bases this argument on the fact that the Government did not conduct a full undercover operation in this investigation.

An application for wiretap authorization must provide "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous . . . ." 18 U.S.C. § 2518(1)(c). To issue authorization for a wiretap, a judge must find that "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed or to be too dangerous . . . ." 18 U.S.C. § 2518(3)(c). However, "there is no requirement 'that any particular investigative procedures be exhausted before a wiretap may be authorized.'" <u>United States</u>

---

[5] Indeed at the argument of the motions, defense counsel made it clear that he was arguing only that there was insufficient probable cause at the time of the Kaleta Affidavit, not that there was insufficient probable cause at the time the Daly Affidavit was submitted to Judge Griesa. (Tr. at 3.)

12

v. Young, 822 F.2d 1234, 1237 (2d Cir. 1987) (quoting United
States v. Lilla, 699 F.2d 99, 104 (2d Cir. 1983).

In his Affidavit, Special Agent Kaleta described the
investigative techniques the Government had already employed and
explained why a wiretap was required. (Gov't Ex. B ¶¶ 21-30.)
Special Agent Kaleta explained that the Government had already
used a confidential informant (the CW) and had already examined
telephone records for the defendant's cellphone. Special Agent
Kaleta also detailed the problems with the use of other
investigative techniques in the context of this investigation.
The information Special Agent Kaleta provided is similar to
showings that other courts have found sufficient to satisfy the
requirements of 18 U.S.C. § 2518(1)(c).

For example, Special Agent Kaleta explained that intensive
physical surveillance would likely alert the defendant that he
was being monitored, cf. Young, 822 F.2d at 1237, and that in
any event it was unlikely to work because the defendant was very
cautious and secretive about his operations. He further stated
that telephone toll records were insufficient evidence on which
to base criminal charges, and could not show with certainty who
participated in the conversations. Cf. id. Special Agent
Kaleta also stated that the CW was only of limited use, because
he would not be privy to all of the criminal activities of the
defendant and his alleged co-conspirators. Cf. United States v.

<u>Puglisi</u>, 790 F.2d 240, 241-42 (2d Cir. 1986) (upholding district court's refusal to suppress wiretap evidence on lack-of-necessity grounds where confidential informants would be unable adequately to penetrate the conspiracy). Indeed, the Kaleta Affidavit was exhaustive in its explanation for why a wiretap was necessary; in addition to the alternative investigative techniques just mentioned, the Affidavit provided persuasive reasons for the insufficiency of using electronic surveillance, a federal grand jury, witness interviews, search warrants, and arrests. (Gov't Ex. B ¶¶ 21-30.)

As to an undercover operation, specifically identified by the defendant as an alternative that should have been tried, Special Agent Kaleta explained that the defendant and his alleged co-conspirators were "unlikely to discuss the full extent of their organization's activities or membership when dealing with an 'outsider' such as an undercover officer . . . . In addition . . . the insertion of an undercover officer would involve unacceptable security risks." (Gov't Ex. B ¶ 28.) It should be noted that the narcotics organization in which the defendant is accused of participating is alleged to revolve around the defendant's family: the defendant, his cousin, and his brother. Courts have acknowledged that ties of this kind make an undercover operation less plausible. See <u>Puglisi</u>, 790 F.2d at 242 ("an undercover officer would be unable to

infiltrate the conspiracy because of the close-knit nature of the group . . . .").

Because the Affidavit comprehensively explained the need to use a wiretap and the insufficiency of alternative investigative techniques, the Government clearly met its burden of showing that a wiretap was necessary, and the issuing judge had a sufficient basis to find that normal investigative techniques were tried without success or reasonably appeared to be unlikely to succeed or to be too dangerous.

The defendant does not make a specific argument as to why necessity for a wiretap was not shown in the case of the Casanova cellphone. In any event, the Daly Affidavit satisfied the necessity requirement. The Daly Affidavit presented an analysis of alternative investigative techniques and their insufficiency in this case very similar to the analysis set forth in the Kaleta Affidavit. (Gov't Ex. C. ¶¶ 22-31.) For the same reasons this analysis sufficed to show necessity for a wiretap of the defendant's cellphone, it sufficed to show necessity for a wiretap of the Casanova cellphone. Therefore there is no basis to suppress any wiretap evidence in this case on the grounds that a wiretap was not necessary.

The defendant argues that the Government did not comply with the statutory minimization requirement for the wiretaps.

Every wiretap order must "contain a provision that the authorization to intercept . . . shall be conducted in such a way as to minimize the interception of communications not otherwise subject to interception under this chapter . . . ." 18 U.S.C. § 2518(5). The wiretap orders in this case incorporated such a provision; the issue is whether the Government obeyed the provision in carrying out the wiretaps. (Gov't Ex. E ¶ 2.)

The statutory minimization requirement "does not forbid the interception of all nonrelevant conversations, but rather instructs the agents to conduct the surveillance in such a manner as to 'minimize' the interception of such conversations." Scott v. United States, 436 U.S. 128, 140 (1978). Compliance with the minimization requirement is measured by the reasonableness of the surveilling agent's conduct, which is evaluated using an ad hoc analysis of the facts surrounding the particular interception. Id. at 139. "[T]he mere fact that every conversation is monitored does not necessarily render the surveillance violative of the minimization requirement of the statute . . . . [N]o electronic surveillance can be so conducted that innocent conversation can be totally eliminated." United

States v. Bynum, 485 F.2d 490, 500 (2d Cir. 1973), vacated on other grounds, 417 U.S. 903 (1974).  Indeed, "the percentage of non-pertinent calls [may be] relatively high and yet their interception [may] still [be] reasonable."  Scott, 436 U.S. at 140.  The minimization requirement does not extend to calls lasting two minutes or less.  See Bynum, 485 F.2d at 500 (calls lasting less than two minutes eliminated from consideration of minimization requirement in case of "wide-ranging criminal activity"); United States v. Capra, 501 F.2d 267, 275-76 (2d Cir. 1974) (citing Bynum); United States v. Armocida, 515 F.2d 29, 45 (3d Cir. 1975) (citing Bynum in eliminating calls lasting less than two minutes from consideration of minimization requirement).

     In support of his argument that the minimization requirement was not met, the defendant states that a preliminary review of the intercepted conversations reveals that the surveilling agents minimized only a small percentage of them. On this basis, the defendant requests a hearing to determine whether the minimization requirement was met.

     The defendant's argument fails with respect to the wiretap of his cellphone.  The percentage of calls minimized is not dispositive of whether the statutory minimization requirement was satisfied.  Indeed, in Scott, 436 U.S. at 132, pursuant to a wiretap order that contained a minimization requirement,

17

"virtually all of the conversations [over the tapped phone] were intercepted while only 40% of them were shown to be narcotics related."  The Supreme Court held that the wiretap evidence should not be suppressed, explaining that the minimization inquiry entailed "an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time," rather than an assessment of the officer's "good-faith efforts to comply with the minimization requirement . . . of § 2518(5)."  Id. at 135-37.

The actions taken by the surveilling officers with respect to the defendant's cellphone in this case were objectively reasonable.  Of the 1,541 calls intercepted over the defendant's cellphone, only fifty lasted longer than two minutes in duration, and were thereby subject to the minimization requirement.  Of those fifty calls, thirty were pertinent to the investigation.  Of the remaining twenty calls that were not pertinent to the investigation, nine were minimized. (Monitoring Logs at Ex. A.)  Thus, the defendant's argument amounts to this: of the 1,541 calls that the Government intercepted, there were eleven calls that Government officers should not have listened to, but which they failed to minimize. It is plain from these statistics that the Government's conduct of the wiretap was not objectively unreasonable with respect to failing to minimize enough calls.  In the context of 1,541

calls, the eleven calls at issue represent the inevitability acknowledged in Bynum, 485 F.2d at 500: "no electronic surveillance can be so conducted that innocent conversation can be totally eliminated." Some allowance must also be made for the fact that conversations can shift topics, and it would be unreasonable for surveilling agents to minimize each call that did not begin as incriminating. See United States v. Ianniello, 621 F.Supp. 1455, 1471 (S.D.N.Y. 1985) (Weinfeld, J.) (observing that it is common "for conversations to treat more than one subject, and entirely possible for such dialogues to be comprised of discussion of innocent matters, interspersed with topics of a criminal nature. The statutory requirement of minimization does not mean that only communications exclusively devoted to criminal subjects may be intercepted.").

The Government's actions were especially reasonable in light of the fact that in the intercepted phone calls, the defendant and his conversation partners generally used code words or jargon in reference to what the Government believed were narcotics transactions, rather than mentioning narcotics explicitly. (See, e.g., Gov't Ex. C ¶ 19.) "[C]ourts have recognized that minimization may be more difficult and more extensive surveillance may therefore be permitted where, as here, the targets use jargon or code words . . . ." United States v. Prada, No. 90 Cr. 306, 1991 WL 161323, at *6 (S.D.N.Y.

Aug. 13, 1991) (internal quotation marks and citations omitted).

Thus the use of jargon or code words in this case contributed to

the reasonableness of the Government's failure to minimize each

and every non-pertinent conversation.

It should also be noted that "courts have identified

several measures which the government can take to increase

likelihood of compliance with § 2518(5): (1) maintenance of

monitoring logs; (2) judicial supervision of the progress of the

surveillance; (3) provision of written and oral instructions to

monitoring personnel regarding the legal requirements for

minimization; (4) requiring all monitoring personnel to read the

court orders and applications, and posting of the minimization

instructions, court orders and applications at the monitoring

plant; and (5) supervision by the prosecutor." Prada, 1991 WL

161323 at *6 (internal quotations marks and citations omitted).

The Government took all five of these measures in this case.

(Gov't Exs. D, F, G, H.)

For all of these reasons, it is clear that the Government

did not violate the minimization requirement in its wiretap of

the defendant's cellphone.[6]  The defendant is therefore not

entitled to a hearing regarding minimization.  See United States

v. Giovannelli, No. 01 Cr. 749, 2004 WL 48869, at *3 (S.D.N.Y.

---

[6] It should also be noted that the defendant has failed to provide one example
of an intercepted conversation that should have been minimized.

Jan. 8, 2004) (denying a minimization hearing where "defendants have not adduced any material evidence that the Government failed to take appropriate steps to minimize the interception of communications not otherwise subject to interception").[7]

The defendant's minimization argument also fails with respect to the Government's wiretap of the Casanova cellphone.

The defendant lacks standing to challenge the minimization procedures used during the interceptions of the Casanova cellphone.[8] The defendant argues that he has standing under 18 U.S.C. § 2518(10)(a), because under that statute, "[a]ny aggrieved person in any . . . proceeding in or before any court

---

[7] It is not clear what the defendant would seek to introduce at such a hearing because the defendant has made no colorable claim that the Government failed to meet its minimization requirement. The defendant cites United States v. Tortorello, 480 F.2d 764, 784 (2d Cir. 1973) for the proposition that "a court should not admit evidence derived from an electronic surveillance order unless . . . [it has] hear[d] the testimony of the monitoring agents . . . ." However, it is clear that there is no obligation to hold such a hearing where the defendant has made no showing of a failure to minimize. See, e.g., Giovanelli, 2004 WL 48869 at *3; United States v. Badalamenti, No. 84 Cr. 236, 1985 WL 2572, at *7 (S.D.N.Y. Sep. 19, 1985) (finding "no basis justifying a hearing on minimization" and noting that "[t]he mere fact of the conduct of a wiretap does not require that endless time be wasted in fishing expeditions where no colorable issue has been raised by the papers," but ordering a limited hearing on minimization only "[o]ut of excessive caution"). Tortorello does not control this case, both because the issue whether a minimization hearing was necessary was not contested in Tortorello (there had been a minimization hearing already), and because the Court of Appeals for the Second Circuit in that case explicitly relied on the district court opinion in United States v. Scott, 331 F.Supp. 233 (D.D.C. 1971), suppressing wiretap evidence because the surveilling officers had not attempted to minimize intercepted calls. See Tortorello, 480 F.2d at 784. Scott was subsequently vacated, see 504 F.2d 194 (D.C. Cir. 1974), and that opinion was affirmed on appeal, see 436 U.S. 128 (1978), with the Supreme Court holding that the wiretap evidence should not have been suppressed.

[8] The defendant argues in his Reply Brief that it is not the minimization procedures but the use of the information obtained from the wiretap that is at issue, but that is a distinction without a difference, because the question whether the use of the information obtained from the wiretap must be suppressed depends on the alleged lack of minimization procedures.

. . . may move to suppress the contents of any wire or oral
communication intercepted pursuant to this chapter, or evidence
derived therefrom, on the grounds that – (i) the communication
was unlawfully intercepted; (ii) the order of authorization or
approval under which it was intercepted is insufficient on its
face; or (iii) the interception was not made in conformity with
the order of authorization or approval." 18 U.S.C. §
2518(10)(a). But the Court of Appeals for the Second Circuit
has read § 2518(10)(a) narrowly. "[T]his provision 'is to be
construed in accordance with standing requirements usually
applied to suppression claims under the fourth amendment.'"
United States v. Ruggiero, 928 F.2d 1289, 1303 (2d Cir. 1991)
(quoting United States v. Gallo, 863 F.2d 185, 192 (2d Cir.
1988). Pursuant to this interpretation of the statute, only an
individual with a privacy interest in the subject telephone, or
in the premises in which the telephone is located, has standing
to contest the minimization procedures employed by law
enforcement agents. See, e.g., id.; United States v. Fury, 554
F.2d 522, 526 (2d Cir. 1977); United States v. Greyling, No. 00
Cr. 631, 2002 WL 424655, at *4-5 (S.D.N.Y. Mar. 18, 2002);
United States v. Villegas, No. 92 Cr. 699, 1993 WL 535013, at *8
(S.D.N.Y. Dec. 22, 1993) ("[T]he challenging defendant's privacy
interest in the home containing the phone or in the phone itself
[is] the touchstone for determining standing to challenge

minimization techniques."). The defendant in this case has failed to show a privacy interest in the Casanova cellphone, because he has not alleged any possessory or proprietary interest in that cellphone or the premises in which it is located. See Fury, 554 F.2d at 526; Greyling, 2002 WL 424655 at *4 ("To demonstrate a privacy interest sufficient to confer standing to make a minimization challenge, a defendant must show a possessory or proprietary interest in the premises where the telephone is located or in the phone itself.") (internal citation omitted); Villegas, 1993 WL 535013 at *8; United States v. Musa, No. 90 Cr. 914, 1991 WL 73854, at *1 (S.D.N.Y. Apr. 30, 1991); see also United States v. Rijo, No. 04 Cr. 6128, 2006 WL 3056526, at *9 (W.D.N.Y. July 19, 2006). Accordingly, the defendant lacks standing to challenge the minimization procedures used in the wiretap of the Casanova cellphone.

Even if the defendant did have standing to challenge the minimization procedures used in the wiretap of the Casanova cellphone, the result would be the same: there is no basis for a minimization hearing with respect to the wiretap. The Government intercepted 301 calls over Casanova's cellphone. Of those calls, only ten lasted longer than two minutes. Of those ten calls, five were pertinent to the investigation of Casanova. The Government did not minimize any of the remaining five calls. (Monitoring Logs at Ex. A.) However, in the context of 301

23

intercepted calls, the Government's failure to minimize five of them that were not pertinent to the investigation did not constitute objectively unreasonable conduct.

In addition, like the defendant, Casanova and his conversation partners used jargon or coded language, rather than direct references, to discuss what the Government believes to be narcotics transactions. (See, e.g., Gov't Ex. I.) Moreover, the Government employed the five protective measures listed in Prada as making a finding of compliance with the wiretap minimization requirement more likely. (Gov't Exs. E, I.) In short, even if the defendant had standing to challenge the minimization procedures used for the wiretap of the Casanova cellphone, the analysis and the result would be the same as those for the minimization argument with respect to the defendant's own cellphone.

For the reasons explained above, the defendant is not entitled to a hearing regarding the minimization procedures used for the wiretap of the Casanova cellphone.


D

The defendant moves for a Franks hearing to determine whether suppression of the wiretap evidence is appropriate, on the grounds that the Affidavits submitted by the Government in

its applications for the wiretaps contained false statements and omissions.

Under <u>Franks</u>, 438 U.S. at 155-56, "where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request." However, "[t]o mandate an evidentiary hearing, the challenger's attack must be more than conclusory . . . . [It] should point out specifically the portion of the warrant affidavit that is claimed to be false; and [it] should be accompanied by a statement of supporting reasons." <u>Id.</u> at 171. In addition, the alleged falsehood must have come from the affiant, not a non-governmental informant. "Absent a showing that the affiant himself knowingly included false statements in the affidavit, there is a basis neither for a hearing, nor for suppression itself." <u>United States v. Navarro</u>, 767 F.Supp. 544, 546 (S.D.N.Y. 1991). Moreover, "if these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required." <u>Franks</u>, 438 U.S. at 171-72.

There is no basis for a Franks hearing in this case,
because the defendant's allegations of falsehoods or omissions
in the wiretap Affidavits fall short of the Franks standard.

The defendant claims that Special Agent Kaleta erred in
identifying Casanova as the defendant's cousin.  Even assuming
this was an error, it does not meet the Franks standard to
justify a hearing because the source of the error was the CW,
who identified Casanova as the defendant's cousin, rather than
the affiant himself.  In addition, the defendant does not allege
that the error was knowing, intentional, or reckless.  Moreover,
even if the defendant's familial relationship with Casanova were
put to one side, there would still be probable cause for the
wiretap of the defendant's cellphone, on the basis of the CW's
information, the recorded meeting between the defendant and the
CW, and the toll records analysis.  Indeed, the familial
relationship between the defendant and Casanova had nothing to
do with the Government's showing that probable cause existed to
believe that the defendant was involved in narcotics
transactions.

The defendant points out that the Kaleta Affidavit refers
to cellphone contact between the defendant and one "Karl
Watson," whom Special Agent Kaleta identifies as an associate of
a Mexican drug cartel kingpin, but whom the defendant denies
knowing.  This discrepancy does not meet the Franks standard.

The defendant does not even squarely allege that Special Agent Kaleta is in error: he only denies "intentionally" telephoning Karl Watson. (Deft.'s Aff. ¶ 9.) Moreover, he does not accuse Special Agent Kaleta of knowing, intentional, or reckless falsity in his representation that the defendant made contact with Karl Watson by phone. In any event, if the link between the defendant and Karl Watson were put to one side, there would still have been more than ample grounds for a finding of probable cause to issue the wiretap authorization.

The defendant also claims that the Kaleta Affidavit was inaccurate in its representation that alternative investigative methods other than a wiretap would not be fruitful. But this assertion does not go to the issue of probable cause for wiretap authorization, has no relevance to the need for a <u>Franks</u> hearing, and is inaccurate in any event.

For these reasons, the defendant is not entitled to a <u>Franks</u> hearing.


III

The defendant moves to suppress any evidence obtained in the search of his residence, on the grounds that the search warrant issued by Magistrate Judge Orenstein was a general warrant that did not provide a particularized description of the area to be searched or of the items expected to be recovered.

"The Fourth Amendment . . . does not set forth some general particularity requirement.  It specifies only two matters that must be particularly described: the place to be searched and the persons or things to be seized."  United States v. Grubbs, 547 U.S. 90, 97 (2006) (internal quotations marks, citations, and alterations omitted).  With respect to the place to be searched, "[t]he particularity-of-description requirement is satisfied where the description is such that the officer with a search warrant can with reasonable effort ascertain and identify the place intended."  Maryland v. Garrison, 480 U.S. 79, 91 (1987) (internal quotation marks and citation omitted).  With respect to the persons or things to be seized, the particularity requirement is satisfied if "the description of the property objects of the search was sufficiently specific to permit the rational exercise of judgment by the executing officers in selecting what items to seize."  United States v. LaChance, 788 F.2d 856, 874 (2d Cir. 1986) (internal quotation marks, alterations and citation omitted).  "[G]eneric terms can properly be used to describe the material to be seized . . . . [T]he validity of a warrant is not affected by the fact that a vast amount of material falls within its scope."  United States v. Dinero Express, Inc., No. 99 Cr. 975, 2000 WL 254012, at *8 (S.D.N.Y. Mar. 6, 2000) (internal citations omitted).

The warrant clearly met the particularity requirement with respect to the place to be searched. The warrant gave the exact address for the premises to be searched: "95-09 Jamaica Avenue, 1R, Woodhaven, New York." The warrant indicated that the officers could search the premises and "closed containers and items contained therein." (Gov't Ex. J.) The particularity requirement does not mandate that the warrant provide a narrower area to be searched than that given in the warrant here, because the officers were searching for, among other things, narcotics, which were sufficiently small to be concealed anywhere on the premises. See, e.g., United States v. Gomez, No. 86 Cr. 128, 1986 WL 5386, at *3 (S.D.N.Y. May 8, 1986) ("A lawful search of fixed premises generally extends to the entire area in which the object of the search may be found . . . .") (quoting United States v. Ross, 456 U.S. 798, 820-21 (1982)).

The warrant also met the particularity requirement with respect to the items to be seized. Attached to the warrant was a list of specific items to be "searched [for], located, and seized" from the premises. The list was as follows:

1. Narcotics and items used in the distribution of narcotics, including packaging material, substances used to dilute (or "cut") narcotics, scales to weigh narcotics, and presses and other devices used to shape and form narcotics for distribution;

2. Documents relating to or memorializing the distribution of narcotics, including U.S. currency

used in the purchase and sale of narcotics, buyer lists, seller lists, pay-owe sheets, and records of sales, log books, ledgers, personal telephone/address books, and/or Rolodexes containing the names and addresses and telephone numbers of persons who are associated with the trafficking of narcotics, and computers, electronic devices, and electronic media on which the information described in this paragraph can be stored in electronic form;

3.  Proceeds and articles of personal property which are the fruits, instrumentalities, and evidence of the distribution of narcotics, including U.S. currency, negotiable instruments and financial instruments including stocks and bonds as well as valuable collectible articles;

4.  Indicia of occupancy, residency, and/or ownership of the premises to be searched and other premises;

5.  Fibers, particles, and other items that may be subjected to chemical analysis to determine the presence of narcotics; and

6.  Any other items containing or reflecting evidence of violations of the federal law prohibiting the distribution of narcotics and conspiracy to do the same, Title 21, United States Code, Sections 841(a)(1) and 846.

(Gov't Ex. J, Attachment A.)

This list was sufficiently specific to permit the rational exercise of judgment by the executing officers in selecting what items to seize.  Courts have held warrants using a similar degree of particularity to be sufficiently specific.  See, e.g., LaChance, 788 F.2d at 871 (warrant authorized search for "money intended to be furnished in exchange for controlled substances"); United States v. Sultan, 463 F.2d 1066, 1070 (2d

Cir. 1970) (warrant authorized search for "various general merchandise and assets of [the bankrupt corporation]" in the home of executive suspected of fraudulently concealing assets of the bankrupt corporation); United States v. Jackson, No. 90 Cr. 109, 1990 WL 151098, at *5 (S.D.N.Y. Oct. 5, 1990) (warrant included authorization to seize "other property, documents and things that constitute evidence of the commission of, or are contraband of, violations of the federal laws prohibiting bank robberies"); United States v. Wapnick, No. 92 Cr. 419, 1993 WL 86480, at *2 (E.D.N.Y. Mar. 16, 1993) (warrant included correspondence, computers, tapes and discs, and anything that came from the printer). The catch-all phrase in ¶ 6 of the list attached to the warrant in this case was not fatally broad, because it must be interpreted in the context of the more specific examples that preceded it. See Jackson, 1990 WL 151098, at *5 ("this rather broad provision must be construed in light of the preceding illustrative list of seizable items."). It is plain that the attached list included specific categories of physical evidence and examples of items to be seized such that the searching officers could exercise rational judgment in their search. Moreover, it should be noted that the defendant has not identified any seized item that was outside the scope of the warrant, which weakens his position that the warrant was overly broad. See id. at *5-6.

Therefore, the defendant is not entitled to the exclusion of any evidenced seized from his apartment on the grounds that the warrant for the search was not sufficiently particular.[9]

## IV

The defendant moves to suppress any statements he made during and/or subsequent to his encounter with the police on June 4, 2007 (the date of his arrest). The defendant does not advance any basis for this motion, and there are no facts in the record with respect to any such statements or the circumstances in which they occurred.

The defendant has argued that the wiretaps of his and Casanova's cellphones were illegal, and the evidence obtained thereby should be suppressed. However, for the reasons explained above, this argument fails. Therefore, any statements the defendant made around the time of his arrest cannot be suppressed simply because they were ultimately the fruit of the wiretap. Because the defendant has offered no independent basis for this motion to suppress, and because he has not submitted

---

[9] The defendant does not argue for the exclusion of any evidence seized from his apartment on the grounds that there was no probable cause to search his apartment. In any event, such an argument would fail, because there was ample probable cause to search the premises. For example, in several calls intercepted pursuant to the April 4, 2007 wiretap order, the defendant appeared to make reference to possessing narcotics or items related to narcotics transactions in his apartment. (See, e.g., Gov't Ex. J ¶ 5.)

any facts to the record that might provide an independent basis for the motion, the motion fails.

V

The defendant moves for a bill of particulars on the grounds that he does not have enough information to prepare his defense.

The decision whether to grant a bill of particulars pursuant to Federal Rule of Criminal Procedure 7(f) rests with the sound discretion of the district court. See Fed. R. Cr. P. 7(f) ("The court may direct the government to file a bill of particulars"); see also United States v. Cephas, 937 F.2d 816, 823 (2d Cir. 1991); United States v. Panza, 750 F.2d 1141 (2d Cir. 1984); United States v. Strawberry, 892 F.Supp. 519, 526 (S.D.N.Y. 1995). The purpose of a bill of particulars is to enable a defendant "to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense." United States v. Bortnovsky, 820 F.2d 572, 574 (2d Cir. 1987). A bill of particulars is required "only when the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused." United States v. Torres, 901 F.2d 205, 234 (2d Cir. 1990) (internal quotation marks and citations omitted); see also Cephas, 937 F.2d at 823; Panza, 750

F.2d at 1148. "The Government may not be compelled to provide a bill of particulars disclosing the manner in which it will attempt to prove the charges, the precise manner in which the defendant committed the crimes charged, or a preview of the Government's evidence or legal theories." United States v. Mitlof, 165 F.Supp.2d 558, 569 (S.D.N.Y. 2001) (collecting cases). "Generally, if the information sought by the defendant is provided in the indictment or in some acceptable alternate form, no bill of particulars is required." Bortnovsky, 820 F.2d at 574; see United States v. Barnes, 158 F.3d 662, 665 (2d Cir. 1998). Moreover, "demands for particular information with respect to where, when, and with whom the Government will charge the defendant with conspiring are routinely denied." United States v. Trippe, 171 F.Supp.2d 230, 240 (S.D.N.Y. 2001) (collecting cases); see also United States v. Ojeikere, 299 F.Supp.2d 254, 260-61 (S.D.N.Y. 2004).

There is no need in this case for a bill of particulars. The Government points out that the defendant has been provided with the Complaint, the Indictment, the Kaleta and Daly Affidavits in support of the wiretap applications, periodic reports concerning the wiretaps of the defendant's and Casanova's cellphones, the search warrant Affidavit, copies of consensually-recorded meetings and calls, copies of intercepted calls, a memorandum stating the defendant's post-arrest

statement, and bail arguments with letters submitted in support of the defendant's detention.  The defendant does not deny having access to all of this material.  The defendant has plainly been advised of the nature of the single charge against him: conspiring to distribute and possess with intent to distribute substances containing cocaine from about early 2007 up to and including June 4, 2007.  That is the specific charge levied against him in the Indictment.  The defendant has also been informed of a substantial amount of evidence against him.

The defendant has thus been provided with information sufficient to "advise [him] of the specific acts of which he is accused."  <u>Torres</u>, 901 F.2d at 234 (internal quotation marks and citations omitted).  To the extent the defendant seeks to use a bill of particulars to obtain more information than that, his request is without merit.  In his <u>pro se</u> motion for a bill of particulars, the defendant requests, among other things: the basis for the Government's allegation that a conspiracy began in early 2007 and lasted through June 4, 2007; the dates on which each alleged co-conspirator joined the conspiracy; where the Government alleges the conspiracy was formed; and information about any meetings or discussions in connection with the conspiracy.  This information, and similar information requested in the <u>pro se</u> motion, plainly goes to "the manner in which [the Government] will attempt to prove the charges, the precise

manner in which the defendant committed the crime charged, or a preview of the Government's evidence or legal theories." Mitlof, 165 F.Supp.2d at 569. "What defendant seeks is in the nature of the 'wheres, whens, and with whoms' that Courts have held to be beyond the scope of a bill of particulars." Id. (citing Torres, 901 F.2d at 233-34 (affirming denial of request for a bill of particulars seeking date defendant joined conspiracy, the identity of co-conspirators, and precise dates and locations relating to overt acts)). Thus the defendant has no legitimate basis for a bill of particulars.


VI

The defendant moves for dismissal of the Indictment as "void for duplicity." This motion is without merit, because the Indictment only charges one offense: conspiracy to distribute and possess with intent to distribute a controlled substance. (See Indictment.) The defendant's argument that the Indictment charges multiple offenses in the same count is mistaken. The only charge in the Indictment is conspiracy; the defendant has not been charged with the substantive offense of distribution or possession with intent to distribute a controlled substance. Therefore, the Indictment is not duplicitous.

CONCLUSION

For all of the foregoing reasons, the defendant's motions
are **denied**.

**SO ORDERED.**

**Dated:** **New York, New York**
**November 5, 2008**

_G. Kolto._

John G. Koeltl
United States District Judge